The opinion of the court was delivered by
Tilghman, C. J.
All questions of this kind, depend on the contract in each particular case. When the .intention is clear, there is no need of resorting to judicial decisions, to assist in the construction of the contract. But the wilting is often drawn with so much ambiguity, that we are glad to receive light from opinions which have been delivered on similar subjects. By the articles of agreement, in this case, Snyder was to deliver possession, on a certain day, “ of three hundred and forty-three acres of land, be the same more or less, for which Bailey was to pay twenty dollars per acre, viz. one thousand pounds by the 10th of April, 1813, and from thenceforth two hundred'pounds, on the 1st of May, 1S14, and so on, until the whole is paid. The' said three hundred and forty-three acres of land, that the said Snyder has sold to the said Bailey, is joining Robert Foreman on the west, and Samuel Foreman on the west, Jacob Snyder’s saw-mill place on the south, and John Brinton’s on the east, and Robert Foreman on the north. And Snyder promises Bailey, that, whenever the one thousand pounds are paid, he will give a good ,and sufficient deed, according to law.” No deed was given during Snyder’s lifetime; and when a conveyance was made by his administrators, (the plaintiffs,) after his death, it was agreed, that it should be without prejudice to their claim of payment, at the rate of twenty dollars an acre, for thirty-three acres, which the tract was found, on actual survey, to contain, beyond the estimated *162 quantity of three hundred and forty-three acres. In considering tluse articles, we perceive, that the sum of twenty dollars an acre is mentioned, and no gross sum is mentioned, as the price of the whole. Neither are the boundaries described with any precision. There is no certainty in the expression, “ joining Robert Foreman on the west” &c. &e. so that it would seem, the parties intended, that a survey should be made, before the busisiness was closed, by a conveyance, on one side, and a bond for the purchase money, on the other. It does not absolutely follow, that a survey is to be made, and the land paid for by the acre, in in all cases where the agreement mentions, that a tract containing so many, more or less, is sold, at a certain price by the acre. Because, taking the whole agreement together, it may appear, that the parties intended to consider the tract as containing a certain number of acres. Low-priced lands are often sold with reference to an official survey, where the intent is to abide by that survey, although it may be mentioned in the articles of agreement, that the vendor is to pay at the rate of so much per acre. But, where land is of' the value of twenty dollars an acre, each acre is of importance to both buyer and seller; and where it is said, in such case, that the buyer is to pay so much an acre, there will be great reason to conclude, that the sale was intended to be by the acre, unless other parts of the instrument pretty clearly indicate the contrary. It was decided, in the case of Carter v. Campbell, in the Court of Appeals of Virginia, (Gilman’s Rep. 159,) that where a sale is by. the acre, the right of ascertaining the quantity by a survey, exists, whether expressly reserved or not, and if no time be limited for making the election to survey, it may be done at any time before the whole business is closed. This is agreeable to the law, as I conceive it has been taken among us. But where the articles of agreement have been carried into effect, by a conveyance from the vendor, and bond for the purchase money from the vendee, without a survey, there, in general, the contract is considered as closed. And it is fair, and very much for the public good, that it should be so considered, otherwise, there would be no end to controversy. I say, this is the general rule, but there may lie extreme cases, which must be excepted; cases, for instance, in which the real differs so much from the estimated quantity of land, as to make it evident, either that both parties were under a misapprehension, or one of them guilty of a gross fraud. In Smith v. Evans, 6 Binn. 102, where the sale was decided to be for a sum in gross, although the price of twelve shillings per acre was mentioned, the articles had been carried into execution,' by a conveyance from the vendor, and bond and mortgage from the yendee; a circumstance of great weight with me, in forming an opinion in that case. But, in the case before us, that circumstance does not exist; so that the contract is to be judged of only by the articles of agreement. I will not say, that they are drawn with such clear *163 ness as to convey the meaning of the parties with absolute certainty. ' But I cannot help inclining to the opinion, that it was a sale by the acre. No draught, or survey, is referred to, which it might be supposed that the parties intended to adopt, in order to avoid further expense. The very inaccurate description of the land, with regard to boundaries, seemed to call for some subsequent act, in order to ascertain precisely what was bought and sold. And when to this is added the value of each acre, (twenty dollars,) and the express mention of the price of twenty dollars an acre, without any other expressions clearly indicating a contrary intention; and when it is considered, also, that payment according to the actual quantity of land, is, in its nature, the most equitable bargain, I cannot resist the conclusion, that the parties reserved to themselves the right of making the survey, for the purpose of ascertaining the quantity for which twenty dollars an acre was to be paid. This was the construction given to those articles, by the Court of Common Pleas, and I am therefore of opinion that the judgment should be affirmed.
Judgment affirmed.